IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MATTHEW WARMUS**,                          Case Number 4:14 CV 1925

      Petitioner,                          Judge John R. Adams

   v.                          REPORT AND RECOMMENDATION

**CHRISTOPHER LAROSE,** Warden

      Respondent.                          Magistrate Judge James R. Knepp II


### INTRODUCTION

This is an action initiated by Petitioner Matthew Warmus, a prisoner in state custody, seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Doc. 1). Respondent Warden Christopher LaRose filed a Return of Writ (Doc. 8), and Petitioner moved to expand the record under Rule 5 of the Rules Governing Section 2254 (Doc. 13), which the Court granted (Doc. 14). Respondent filed a Supplement to the Return of Writ (Doc. 15) and Petitioner filed a Traverse[1] (Doc. 18). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated September 4, 2014). For the reasons discussed below, the undersigned recommends the Petition be denied and dismissed.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. §

---

1. Petitioner used "traverse" to identify what is currently referred to as a "reply". *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Eighth District Court of Appeals set forth the following findings of fact:

> The state showed that Warmus and his female companion for the evening entered a downtown Cleveland parking lot that advertised $10 parking. Warmus parked in a space next to the lot entrance, but the victim-attendant, David Williams, told him that he had parked in a $20 parking space. Believing he was being cheated, Warmus began to argue with Williams. The argument escalated, and Warmus pushed Williams. Williams pushed back, and the two men grappled until Williams put Warmus in a headlock and punched him three times. During this struggle, the attendant told Warmus's companion to "calm your boy down." The companion told Williams that they would leave, so he released Warmus and went to assist other drivers who had entered the lot. Warmus went to the trunk of his car and retrieved a handgun. He pointed the gun at Williams and told him to get on the ground. Williams began reaching for his own gun when Warmus fired three shots from a range of no more than three feet: one shot struck Williams in the back of the head; the other two struck him in the abdomen.
>
> Warmus claimed to have acted in self-defense. He said that Williams's headlock caused him to lose his breath. Once released from the hold, he said that he struggled to regain his breath and heard Williams tell him to leave. Warmus replied that he was going to call the police and the owner of the parking lot to complain. At that point, Williams said, "[N]o you're not," and pulled out a gun. Warmus said he walked to his car, opened the trunk, and grabbed his gun. Warmus pointed the gun at Williams and told him to drop his gun, but Williams refused. Warmus then "shot until [Williams's] gun wasn't in his hand anymore." He placed his gun back in the trunk of the car and called the police to report the shooting.
>
> Eyewitnesses disputed Warmus's version of events. Although all of the eyewitnesses saw Warmus shoot Williams, none of them saw Williams holding a gun, much less pointing one at Warmus (one witness saw Williams reaching for his gun as Warmus shot him). When the police arrived, Warmus said that he knew Williams from a similar interaction a month earlier when he tried to park in the same spot and was charged an additional fee, saying, "I know him. We argued over this in the past." As Warmus sat in a police cruiser following his arrest, he told an officer that after Williams released him from the headlock, he went back to selling parking spaces. And at no point in speaking with the officer, or at any other point in the investigation, did Warmus say that he acted in self-defense. The police also found it unusual that a number of witnesses approached them after the fact to report the shooting. One of them appeared to embody the views of these

2

witnesses by saying that she did so because she "felt that if nobody was witness for [Williams], because he was wrongly shot, I thought I should stand up for him."

*State v. Warmus*, 967 N.E.2d 1223 (2011); (Doc. 8-1, Ex. 10).

## PROCEDURAL BACKGROUND

Petitioner was indicted by the January 2010 Term of the Cuyahoga County, Ohio Grand Jury on one count of Aggravated Murder in violation of Ohio Revised Code § 2903.01 (A), with a firearm and forfeiture specification. (Doc. 8-1, Ex. 1). Petitioner pled not guilty to the charges in the indictment. (Doc. 8-1, Ex. 2). Prior to trial, Petitioner filed a motion to suppress statements made by him after his 911 call on April 9, 2010. (Doc. 8-1, Ex. 3). The court held a hearing on the motion to suppress and denied the motion. (Doc. 8-1, Ex. 4). A jury trial commenced, and Petitioner was found guilty of the lesser included offense of Murder with a three-year firearm specification. (Doc. 8-1, Ex. 5). On October 28, 2010, Petitioner was sentenced to an aggregate term of eighteen years to life in prison. (Doc. 8-1, Ex. 5).

### Direct Appeal

On November 16, 2010, Petitioner, through counsel, filed a timely notice of Appeal to the Eighth District Court of Appeals. (Doc. 8-1, Ex. 6). Petitioner raised the following assignments of error:

1. The trial court denied the appellant due process of law and a fair trial by allowing repeated instances of improper opinion testimony to be considered by the jury.

2. The trial court erred by allowing a state expert to invade the province of the jury by testifying outside his expertise to an ultimate issue before the jury.

3. Repeated acts of prosecutorial misconduct throughout the trial deprived the appellant of a fair trial.

4. Ohio's requirement that a defendant bear the burden of proof when raising the defense of self-defense is unconstitutional. Therefore, the trial court erred in

instructing the jury that the appellant bore the burden of proof to establish self-defense.

5. The trial court erred by failing to conduct a hearing pursuant to *Remmer v. United States* (1954), 347 U.S. 227 after providing a juror a ride to the courthouse during the trial.

6. The trial's allowance of prejudicially irrelevant evidence deprived the appellant of a fair trial.

7. The trial court erred by unfairly restricting the appellant's ability to cross-examine numerous states witnesses.

8. Confusing and inaccurate jury instructions deprived the appellant of his due process right to a fair trial.

9. Defense counsel's failure to preserve meritorious issues deprived the appellant his right to effective assistance of counsel.

10. Cumulative errors deprived the appellant of his due process right to a fair trial.

11. The trial court erroneously ordered the appellant to pay a fine of $20,000.00 as the maximum fine for a conviction of murder, R.C. §2903.02, is $15,000.00.

(Doc. 8-1, Ex. 7). The state filed a response (Doc. 8-1, Ex. 8) and Petitioner filed a reply (Doc. 8-1, Ex. 9).  On November 10, 2011, the Court of Appeals affirmed Petitioner's conviction and sentence but remanded the imposition of an improper fine amount. (Doc. 8-1, Ex. 10).

Petitioner, through counsel, timely appealed this decision to the Ohio Supreme Court on December 13, 2011. (Doc. 8, at 4; Doc. 8-1, Ex. 11) raising the following propositions of law:

1. Where a defendant asserts self-defense, a witness may not provide his or her opinion on whether the defendant should have retreated without action as self-defense encompasses a subjective evaluation of the defendant's acts rather than objective standard.

2. A witness may not provide testimony in an area which will not assist the jury to understand the issues at hand. Because a juror does not need assistance in listening, an audio expert may testify as to the technique used to enhance a tape, but may not testify as to the content of that tape.

3. Repeated instances of the prosecution misstating evidence, misrepresenting the law, accusing the defendant of uncharged offenses, and generally encouraging the jury to base its verdict on emotion rather than the evidence

4

individually and cumulatively acted to deprive the defendant of his right to a fair trial.

4. Ohio's requirement that a defendant bears the burden of proof when raising the defense of self-defense is barred by both the federal and Ohio constitutions.

5. The trial court has an affirmative duty to conduct a hearing into the possible prejudice which may have resulted from any improper contact between the court and a juror. Because the state bears the burden of proving no prejudice resulted from the contact, the failure to conduct a hearing must result in a new trial.

6. A trial court may not restrict defense cross examination of state witnesses to attack improper testimony on the state of the law of self-defense.

7. Where a defendant asserts self-defense, an instruction requiring both the state and the defense to prove the elements of self-defense is confusing and ambiguous. Where the totality of the instructions fail to clearly convey the state of the law, a reversal of the conviction is required.

8. The failure to object to a meritorious issue or issues constitutes ineffective assistance of counsel where the failure to do so resulted in the jury hearing unfairly prejudicial evidence which rendered the verdict unreliable.

9. A combination of errors may result in the requirement of a new trial even where the errors standing alone may not require reversal of the conviction.

(Doc. 8-1, Ex. 12). The State waived response. (Doc. 8-1, Ex. 13). On February 22, 2012, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. (Doc. 8-1, Ex. 14). Petitioner, through counsel, timely filed an application for a writ of certiorari to the United State Supreme Court, which was denied on October 1, 2012. (Doc. 8-1, Ex. 15).

**<u>Re-Sentencing</u>**

Pursuant to the Court of Appeal's remand, Petitioner was resentenced to an aggregate term of eighteen years to life and found to be indigent; all fines and restitution were waived. (Doc. 8-1, Ex. 16). Petitioner did not appeal this decision.

**Post-Conviction Relief**

On July 15, 2011, while the direct appeal was still pending, Petitioner filed a petition to vacate or set aside his sentence pursuant to R.C. § 2953.21, and presented the following claims for relief:

1. The testimony of Thomas Ciula, a forensic video analyst with the Cuyahoga County Coroner's Office did not meet the *Daubert* criteria.

2. Petitioner was denied due process of law and a fair trial by improper argument by the prosecutor and the failure to provide Ciula's report within 21 days of trial.

3. Petitioner's Fifth Amendment right against self-incrimination was violated.

4. Petitioner received ineffective assistance of counsel

(Doc. 8-1, Ex. 17). On May 9, 2013, the Cuyahoga County Common Pleas Court denied Petitioner's petition for post-conviction relief. (Ex. 20).

Petitioner, through counsel, timely filed an appeal to the Eighth District Court of Appeals on June 3, 2013. (Doc. 8-1, Ex. 22). Petitioner raised the following assignments of error:

1. The trial court denied the appellant due process of law and a fair trial by allowing a state expert witness to testify that he listened to an unintelligible recording of the petitioner and interpreted those words to constitute a possible confession by the petitioner.

2. The prosecutor committed misconduct and the trial court erred by introducing and arguing that the petitioner transported an illegal weapon in his vehicle.

3. The trial court erred by not ensuring Warmus understood his right against self-incrimination as established by the fifth amendment to the United States Constitution.

4. The petitioner was deprived of his rights to effective assistance of counsel and to due process of law as guaranteed by the Fifth, Sixth and Fourteenth amendment to the United States Constitution and Article I §10 and §16 of the Ohio Constitution.

5. The trial court erred by failing to hold an evidentiary hearing as the affidavits provided in a petitioner's motion to vacate filed pursuant to R.C. §2953.21 establish a meritorious issue.

6. Cumulative errors deprived the appellant of his due process right to a fair trial.

6

(Doc. 8-1, Ex. 23). The State filed a brief in response (Doc. 8-1, Ex. 24) and Petitioner filed a reply (Doc. 8-1, Ex. 24). The Eighth District affirmed the Common Pleas Court's decision that the claims were barred by *res judicata*. (Doc. 8-1, Ex. 26).

Petitioner, through counsel, filed a timely notice of appeal to the Ohio Supreme Court on April 15, 2014. (Doc. 8-1, Ex. 26). He raised the following propositions of law:

1. If a state expert witness testifies about a subject that has not been accepted in the scientific community, the defendant may properly impeach that testimony pursuant to R.C. §2953.21 with the affidavit of an expert that exposes the fallacy of the state expert testimony.

2. The prosecutor may not suggest to the jury that the defendant committed an uncharged offense through questioning of the defendant, particularly when the law establishes that the alleged transgression was, in fact, legal.

3. Before a defendant testifies on his own behalf, it is incumbent on the trial court to ensure that the defendant has been advised of his Fifth Amendment protections against self-incrimination.

4. In a case of self-defense, defense counsel must present available credible evidence establishing the subjective belief as to why the defendant believed that his life was endangered.

5. Where the affidavits provided in a petitioner's motion to vacate filed pursuant to R.C. §2953.21 establish a meritorious issue, the trial court may not dismiss the petition without an evidentiary hearing.

6. A combination of errors may result in the requirement of a new trial even where the errors standing alone may not require reversal of the conviction.

(Doc. 8-1, Ex. 28). The State filed a memorandum in response (Doc. 8-1, Ex. 29) and on July 9, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. 8-1, Ex. 30).

## FEDERAL HABEAS CORPUS

On August 29, 2014, Petitioner, through counsel, filed the instant Petition raising the following grounds for relief:

**GROUND ONE:** SUBJECTIVE OPINION EVIDENCE, INADMISSIBLE AS TO SELF-DEFENSE CLAIM.

**GROUND TWO:** "LISTENING EXPERT" INVADED PROVIDENCE OF JURY.

**GROUND THREE:** PROSECUTORIAL MISCONDUCT.

**GROUND FOUR:** FAILURE TO ADVISE OF RIGHT AGAINST SELF-INCRIMINATION.

**GROUND FIVE:** OHIO'S BURDEN OF SELF-DEFENSE LAW IS A VIOLATION OF STATE AND FEDERAL LAW.

**GROUND SIX:** FAILURE TO CONDUCT *REMMER* HEARING.

**GROUND SEVEN:** IMPROPER RESTRICTION OF DEFENSE CROSS EXAMINATION.

**GROUND EIGHT:** CONFUSING JURY INSTRUCTION DEPRIVES DUE PROCESS.

**GROUND NINE:** FAILURE TO PRESERVE MERITORIOUS ISSUES IS INEFFECTIVE ASSISTANCE OF COUNSEL.

**GROUND TEN:** CUMULATIVE ERRORS DENIED DUE PROCESS.

(Doc. 1).

**JURISDICTIONAL ISSUES**

***Procedural Default***

Before a Petitioner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. §2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court and to all appropriate state courts prior to that. §2254(b),(c); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). This requirement is satisfied when it is clear the claims are procedurally barred under state law. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

When a habeas petitioner fails to present a claim to the state court either due to: (1) his failure to fairly raise that claim before the state courts while state remedies are still available; or (2) noncompliance with a state procedural rule which prevents the state courts from reaching the

8

merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on review. *Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Seymour v. Walker*, 224 F.2d 542, 550 (6th Cir. 2000).

The second procedural bar – noncompliance with a state procedural rule, applies in this case. As such, federal habeas courts look to the four part test established in *Maupin v. Smith*:

1) whether the petitioner failed to comply with an applicable state procedural rule;

2) whether the state courts actually enforced the state procedural sanction;

3) whether the procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review;

4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice".

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)).

If, because of procedural default, a habeas corpus petitioner can no longer present one or more of his federal claims to the state courts, he has waived those claims for purposes of federal habeas review. Unless, however, a petitioner can show both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998). Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

In extreme cases, when cause and prejudice cannot be shown, a federal habeas court may hear a defaulted constitutional claim if the petitioner shows his conviction is the result of a fundamental miscarriage of justice, i.e., that he is "actually innocent." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this regard, a petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298 (1995).

**Ground Four**

In Ground Four, Petitioner asserts that his Fifth Amendment rights were violated because neither the trial court nor his trial counsel advised him of his right not to testify. (Doc. 1). Petitioner raised this claim in his motion for post-conviction relief and in his subsequent appeals stemming from that motion. (Doc. 8-1, Exs. 20, 23, 28).     Respondent argues the Eighth District's decision that Petitioner's claim is barred by the doctrine of *res judicata* because he failed to raise it on direct appeal, constitutes the actual enforcement of a state procedural rule under *Maupin* barring Petitioner's claim. (Doc. 8, at 14-16).

The Sixth Circuit has generally held that Ohio's application of its *res judicata* rule constitutes an adequate and independent state ground that forecloses federal habeas review. *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002). However, the Sixth Circuit has held that such a claim is not procedurally barred when the claim could not have been raised on direct appeal because it is, "based primarily on credible evidence outside the record". *Hartman v. Bagley*, 492 F. 3d 347, 358 (6th Cir. 2007).

Petitioner argues because Ground Four is based primarily on his own affidavit, which is outside the record, it has not been procedurally defaulted. (Doc. 18, at 35-37). However, Petitioner's claim that he was not advised of his right not to testify is not based primarily on his

own affidavit. Evidence on the record, namely the lack of a record of the court advising him of this right, was available to him. In fact, there was some discussion of Petitioner waiving this trial right on the record, namely his counsel advising the court that he was waiving this right in order to raise the issue of self-defense at trial. (Doc. 9, Ex. 31, Trial Tr. Vol. 2, 194-98).

Moreover, it is difficult to refer to Petitioner's own affidavit as "credible evidence". It is far too convenient for him to be advised by his attorney of his right not to testify and then subsequently claim he was not on appeal. Absent additional evidence sustaining his claim, it is difficult to say Petitioner's own affidavit is credible.

Thus, Petitioner failed to comply with a procedural rule, namely a requirement that he raise his claim that he was not advised of his right not to testify on direct appeal; the court enforced the rule; the rule constituted an adequate and independent state ground for the decision; and Petitioner has not shown cause and prejudice for his failure to raise the claim. *Maupin*, 785 F.2d at 138. Therefore, the Court should dismiss Petitioner's Fourth Ground for relief as procedurally defaulted.

**Ground Six**

In his Sixth Ground for relief, Petitioner argues the trial court erred in failing to hold a *Remmer* hearing to determine whether he had been prejudiced by the trial judge giving a juror a ride to court that morning. (Doc. 18, at 45).

On direct appeal, the Eighth District reviewed this decision for plain error only because Petitioner had not objected to it at trial, even after the trial judge had offered the parties the opportunity to object and to depose the juror. (Doc. 8-1, Ex. 10)  In doing so, the appellate court was enforcing Ohio's contemporaneous objection rule, which requires that parties preserve errors

for appeal by calling them to the attention of the trial court at a time when the error could have been corrected. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus.

The contemporaneous objection rule is an adequate and independent state ground for dismissing a claim. *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). Petitioner has not shown cause for this default nor is he alleging actual innocence, therefore the *Maupin* factors have been met and the Court should dismiss Petitioner's Sixth Ground for relief as procedurally defaulted.

**Ground Eight**

Similarly, in Petitioner's Eighth Ground for relief, he complains that confusing and inadequate jury instructions deprived him of his right to due process and a fair trial. (Doc. 18, at 58). The Eighth District reviewed this decision for plain error on direct appeal because Petitioner had not objected to them during the trial as required by the contemporaneous objection rule. (Doc. 8-1, Ex. 10).

Once again, the *Maupin* standard is met; Petitioner failed to comply with a procedural rule, the Eighth District actually enforced the procedural bar, and it constituted adequate and independent grounds for the appellate court's decision. *See Paprocki v. Foltz*, 869 F. 2d 281 (6th Cir. 1989). Petitioner has not provided the court with cause for his failure to object; therefore the Court should dismiss Petitioner's Eighth Ground for relief as procedurally defaulted.

**Ground Nine**

In his Ninth Ground for relief, Petitioner argues he received ineffective assistance of counsel because his trial counsel (1) failed to use evidence that he had been the victim of a violent attack which would affected his subjective belief about the need to use self-defense; (2) failed to consider that the court might not allow the program they had been using to show the

angle of the bullets into evidence because it might not be accurate; (3) failed to obtain a computer expert to testify about the reliability of the computer program; and (4) failed to object to improper evidence and erroneous jury instructions and court rulings, specifically failing to request a *Remmer* hearing after learning the trial judge had provided a ride to a sitting juror; "opening the door" by comparing Petitioner's actions to a police officer; and failing to object to a confusing jury instruction that switched the burden of proof. (Doc. 1, at 54-58).

On appeal of Petitioner's motion for post-conviction relief, the Eighth District declined to address Petitioner's claims his counsel was ineffective due to his failure to anticipate problems with the computer program and his failure to introduce evidence he was the victim of an attack because Petitioner had not raised these issues on direct appeal and he could have. (Doc. 8-1, Ex. 26).

As stated in Ground Four, the Sixth Circuit has generally held that Ohio's application of its *res judicata* is an adequate and independent state ground that forecloses federal habeas review. *Monzo*, 281 F.3d at 577. However, such a claim is not procedurally barred when the claim could not have been raised on direct appeal because it is, "based primarily on credible evidence outside the record". *Hartman*, 492 F. 3d at 358.

Here, Petitioner has not alleged that these claims are based primarily on evidence outside the record and it is not evident to this Court that there is any evidence outside the record that would be a primary part of his claim. (Doc. 1-1, at 39-44; Doc. 18, at 61-63). Therefore, the *Maupin* standard is met; the state court actually enforced a procedural bar that constituted an adequate and independent state bar to reviewing Petitioner's claim and Petitioner has not shown cause, prejudice, or alleged actual innocence. Therefore, the Court should dismiss Ground Nine

in part; as procedurally defaulted, allowing only the claim his counsel was ineffective for failing to object to improper evidence and jury instructions, to remain.

### *Non-cognizable Claims*

Before turning to the merits of Petitioner's claims, the Court must determine whether Petitioner's claims are cognizable for the purposes of habeas corpus jurisdiction. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs what claims may be are cognizable on habeas corpus review. 28 U.S.C. § 2254(a). The Sixth Circuit has held that because the Supreme Court has not determined that a combination of distinct constitutional claims are entitled to habeas relief, "it cannot be said that the judgment of the Ohio courts is contrary to *Berger*, or any other Supreme Court decision so as to warrant relief under AEDPA" when a cumulative error claim is made. *Lorraine v. Coyle*, 291 F.3d 416, 446 (6th Cir. 2002) (discussing *Berger v. United State*, 295 U.S. 78 (1935)).

### **Ground Ten**

Petitioner asserts in Ground Ten that the cumulative errors of the trial court, prosecution, and the ineffectiveness of his defense counsel deprived him of a fair trial. (Doc. 1, at 60). Since this claim rests on a combination of constitutional claims rather than a single one, this Court should dismiss Petitioner's Tenth Ground for relief as non-cognizable.

### STANDARD OF REVIEW

Federal habeas claims previously adjudicated by the state courts are governed by AEDPA, codified at 28 U.S.C. § 2254(d). AEDPA provides that a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) the

state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceedings." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. §2254(d)).

A state court decision is considered "contrary to . . . clearly established federal law" if the two are "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). To be deemed an "unreasonable application" of clearly established federal law, a state-court decision on the merits must be "objectively unreasonable", not simply erroneous or incorrect. *Id*; *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006). Meaning, a "state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

## **Ground One**

In his first ground for relief, Petitioner argues the trial court improperly permitted police and lay witnesses to testify regarding the key elements of self-defense, including the duty to retreat and the reasonableness of the use of deadly force. (Doc. 1, at 21). Specifically, the trial court permitted police officers to offer "expert" opinions on whether Petitioner was reasonable in his use of deadly force and allowed police and lay witnesses to provide their opinion on whether Petitioner could or should have been able to safely retreat without using deadly force. (Doc. 1, at 21). This argument is addressed on its merits.

The Eighth District analyzed these errors as follows:

> To the extent any witness who actually testified to seeing the altercation that led to the shooting gave their opinion that deadly force was unwarranted under the circumstances, those opinions were properly admitted under Evid.R. 701.

Although Ohio uses a subjective standard for self-defense, the state is not barred from offering testimony to counter what the defendant "subjectively" claims to have believed at the time. In *Koss,* the Supreme Court approved a jury instruction on the reasonableness of a defendant's use of deadly force that stated: "In determining whether the Defendant had reasonable grounds for an honest belief that she was in imminent danger, you must put yourself in the position of the Defendant ***. You must consider the conduct of [the assailant] and determine if such acts and words caused the Defendant to reasonably and honestly believe that she was about to be killed or to receive great bodily harm." *Id.*, 49 Ohio St.3d at 216. The Supreme Court later described this as "a combined subjective and objective test." *Thomas,* 77 Ohio St.3d at 330. This was consistent with previous decisions holding that a defendant's use of deadly force was to be viewed "on the grounds of the bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties." *State v. Sheets* (1926), 115 Ohio St. 308, 310, 152 N.E. 664.

The opinions were offered by eyewitnesses who actually saw events unfold. The opinions were thus helpful to giving the jury a clear understanding of whether Warmus could reasonably believe that deadly force was necessary and whether he exercised sound judgment in doing so. The court did not err by allowing the opinions into evidence.

***

Detective Lem Griffin did not witness the shooting, so he could not give a lay opinion as to whether Warmus was justified in using deadly force. See *Johnson,* 10th Dist. No. 02AP-373, at ¶36. At no point in Griffin's testimony, however, did the court permit him to give his opinion on whether Warmus was justified in shooting Williams - the detective only testified to his opinion of when a *police officer* could use deadly force under similar circumstances and that he did not believe that a headlock constituted an imminent threat on one's life. This might seem like a fine distinction to make, but the state's line of questioning to this witness was prompted by an assertion made in defense counsel's opening statement:

"The third thing that the evidence as a whole shows is that Mr. Warmus responded to the gun threat just as a police officer would have responded. We certainly expect that a police officer confronted with or confronting a suspect who has a gun pulled or even appears to be pointing a gun, we expect that police officer to shoot until the gun drops in self-defense, and that's what Matt did."

By referencing what police officers would have done under similar circumstances, Warmus opened the door to testimony by police officers as to how they would have responded in a similar situation. Though opening statements of counsel are not evidence, *State v. Frazier,* 73 Ohio St.3d 323, 338, 1995-0hio-235, 652 N.E.2d 1000, they usually state the defense's theory of the case. Defense counsel told the jury that the evidence would show that Warmus "responded to the gun threat just as a police officer would have responded." The state was thus entitled

> to offer police testimony to rebut that assertion by offering evidence from police officers to the effect that officers acting in similar circumstances would not have resorted to deadly force. Cf. *State v. Haines,* 112 Ohio St.3d 393, 2006-0hio-6711, 860 N.E.2d 91, ~44 (when a victim's credibility is attacked during opening statements, the prosecution can present rehabilitative evidence during the state's case-in-chief); *United States v. Marin* (C.A.1, 2008), 523 F.3d 24, 31. Griffin's testimony viably countered Warmus's assertion by showing that he, as a police officer, would not in similar circumstances have used deadly force. There was nothing improper about either the state's question or the detective's answer.

(Doc. 8-1, Ex. 10).

Upon review, the Eighth District's reasoning is sound. Ohio Evidence Rule 701 permits a lay witness to testify as to his opinion if such testimony is (1) rationally based on the perception of the witness and (2) helpful to clear understanding of the witnesses' testimony or the determination of a fact at issue. The lay witnesses' who testified as to whether Petitioner could have retreated, had witnessed the event, and their testimony would help the jury determine a fact at issue. (Doc. 8-1, Ex. 10). Although Petitioner argues this is not the case, because Ohio uses a subjective test for self-defense, as the Eighth District states, the subject test is a hybrid theory, where although the person's own perception matters, we use outside information to determine whether the defendant's *bona fide* belief is reasonable and the result of proper care under the circumstances. In other words, the witnesses' testimony would assist the jury in determining if Petitioner's alleged subjective belief was reasonable under the circumstances; therefore, it was properly admitted under Evid. R. 701.

Similarly, by asserting that Petitioner responded to the threat just as a police officer would have responded, Petitioner opened the door to testimony about how a police officer would respond. Although, Petitioner argues the questioning of Detective Griffin by the prosecutor was unfair because it failed to fully address the specific situation Petitioner was in, he has not shown

that this unfairness rises to the level of a constitutional violation let alone that it violates Ohio law. (Doc. 18, at 11-13).

Therefore, Petitioner has failed to identify how the questioning of witnesses during his trial violated clearly established federal law and his first ground for relief should be dismissed on its merits.

**Ground Two**

In his second ground for relief, Petitioner asserts the trial court allowed an audio expert to invade the province of the jury by testifying to a recording's contents which the jury was perfectly capable of hearing for themselves. (Doc. 1, at 29-34). The audio expert had examined the tape of the 911 call made at the scene of the crime. (Doc. 8-1, Ex. 10). The expert testified that at a difficult to decipher portion of the record Petitioner was saying, "if the gun's here, it's my fault," however the Defense had argued that he was saying "it's his gun. Why are you going to say it's my fault? Why?" (Doc. 8-1, Ex. 10).

The Eighth District held that allowing such testimony was in error, Petitioner fundamentally disagreed with what words were spoken, thus this was an issue for the jury to resolve. However the Eighth District further held:

> Despite this error, we cannot say that it was prejudicial. Having independently reviewed the audio of the 911 call, we cannot confidently say that either interpretation by the state or defense was completely accurate. The jury heard the audio and was able to compare it to the transcriptions made by both parties and weigh them against the actual recording. Moreover, to the extent the jury may have given undue weight to the expert's conclusions, that error was certainly harmless given the overwhelming evidence of Warmus's guilt. Even had the court excluded the expert's testimony, there is no probability that the outcome of the trial would have been different.

(Doc. 8-1, Ex. 10).

Petitioner argues this error meets the high burden of showing the state court's error was contrary to clearly established federal law. Specifically, Petitioner takes issue with the Appellate Court's finding of harmless error, calling the testimony, "probably the most prejudicial evidence, let alone unfairly prejudicial statement in the whole case." However, Petitioner offers nothing to refute the Eighth District's conclusion that the overwhelming evidence of his guilt renders this error harmless. Moreover, as the Eighth District accurately indicates, the jury did have the opportunity to hear the recording for themselves and could have concluded that they heard something different. (Doc. 8-1, Ex. 10).

Upon review, there is nothing unreasonable about the appellate court's conclusion that in light of the jury having actually heard the tape for themselves, in addition to other evidence of Petitioner's guilt, this error is harmless. Therefore, the Court should dismiss Ground Two of the Petition on its merits.

## Ground Three

In his Third Ground for relief Petitioner argues the prosecutor engaged in misconduct which so infected the trial with unfairness as to render it a violation of his due process rights. (Doc. 1, at 35-39). Petitioner alleges the following acts of misconduct were committed during his trial:

1. The prosecutor improperly elicited expert and non-expert testimony as set forth in claim one.

2. The prosecutor improperly questioned the defense psychiatric expert to create an inference that Petitioner suffered from a personality or psychiatric disorder.

3. The prosecutor improperly questioned a character witness by asking the question, "where did you learn that type of military style execution?" despite this having no basis in fact.

4. During the question of Petitioner, the state improperly suggested that he had the burden to bring in witnesses to corroborate his testimony and insinuated that he "fought' the state in a pre-trial discovery matter.

5. The prosecutor improperly referred to the shot that hit the victim as an "execution".

6. The state introduced improper allegations designed to create the impression that Petitioner illegally transported a firearm in his vehicle.

(Doc. 1, at 36).

Respondent first argues this claim has been procedurally defaulted except to the extent that Petitioner alleges prosecutorial misconduct due to the prosecutor referring to the shooting as an "execution" and the prosecutor wrongly suggesting Petitioner was illegally transporting a firearm in his vehicle, because Petitioner failed to raise these claims on direct appeal. (Doc. 8, at 35). Respondent is correct, Petitioner does not avoid procedural default by merely presenting a legal theory to the courts, he must present each factual claim. *Nicholas v. Bell*, 440 F. Supp. 2d 730, 755 (E.D. Tenn. 2006); *citing Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987).

Petitioner argues he did present the claims but that the Eighth District refused to address them on the basis of App.R. 16(A)(7) which requires the appellant raise an argument with respect to each assignment of error presented. (Doc. 8-1, Ex. 10). Petitioner had not "separately argue[d] why these claimed instances deprived him of a fair trial" so the Eighth District did not address them. (Doc. 8-1, Ex. 10). Upon review of Petitioner's Brief on direct appeal (Doc. 8-1, Ex.7), it is unclear why this rule was enforced against most, but not all of Petitioner's claims of prosecutorial misconduct. As such, this Court declines to procedurally default any portion of Petitioner's claim and will address Petitioner's prosecutorial misconduct claim on its merits.

"Although the State is obliged to 'prosecute with earnestness and vigor,' it 'is as much [its] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'" *Cone v. Bell*, 556 U.S. 449, 469 (2009) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). To assert a successful claim for prosecutorial misconduct in a habeas proceeding, a prosecutor's conduct must be "so egregious

as to render the petitioner's trial fundamentally unfair." *Buell v. Mitchell*, 274 F.3d 337, 364 (6th Cir. 2001). It "is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)); *Durr v. Mitchell*, 487 F.3d 423, 439 (6th Cir. 2007). Thus, the analysis must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Byrd*, 209 F.3d at 529 (quoting *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit set forth the standards to apply to habeas claims of prosecutorial misconduct, explaining that courts must apply a "two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render [the petitioner's] trial fundamentally unfair." *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012) (quoting *Irick v. Bell*, 565 F.3d 315, 324 (6th Cir. 2009)). First, the court must determine whether the prosecution's conduct was improper. Second, it must determine whether that improper conduct was flagrant by considering four factors: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally. *Id*.

Upon review, with the exception of Petitioner's claims about the firearm and referring to the shooting as an execution, Petitioner, who is represented by counsel, has failed to articulate why these actions were improper and further has failed to explain how the conduct would have prejudiced the jury. The Eighth District overruled a few of the errors in the trial by finding harmless error because the evidence against Petitioner was very strong. (Doc. 8-1, Ex. 10).

21

Petitioner has not refuted this claim, thus this Court cannot find that the prosecutor's actions were in error or even if they were, that they prejudiced Petitioner to such a degree as to render his trial fundamentally unfair.

The "Execution" Statement

The Eighth District analyzed Petitioner's claim that referring to the shooting as an execution was improper as follows:

> Given the entry point of the bullet at the back of the head and the close proximity from which the gun was fired, the state's remarks about an "execution-style" shooting were not improper. Courts have previously described similar shootings as "execution-style." For example, in *State v. Hale,* 119 Ohio St.3d 118, 2008-0hio-3426, 892 N.E.2d 864, the Supreme Court described four gunshots, at least three of which were "at close range, to the head" as an "execution-style" murder. Id. at ¶ 139. See, also, *State v. Palmer,* 80 Ohio St.3d 543, 570, 1997-0hio-312, 687 N.E.2d 685 (describing as "execution-style manner" shots fired on either side of the victim's head into his temple).

(Doc. 8-1, Ex. 10).

Petitioner argues this analysis was not sufficient because "[t]he court failed to cite cases or analyze the issue relative to unfettered use of the term and argument to a jury without any definition or supportive expert testimony which would justify the use of such a conclusory term." However, Petitioner does not provide any law which suggests the court was required to perform such an analysis. Therefore, the prosecutor's comments were not improper.

Illegal Firearm Issue

Lastly, the Eighth District analyzed Petitioner's complaint about the prosecutor giving the jury the impression he was carrying a firearm illegally as follows:

> Questions about Warmus's transportation of a loaded firearm did not reasonably fall within any exception to the prohibition on other acts evidence under Evid.R. 404(B). They did not touch on "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The state cites to no exception for admissibility under the rule, nor can we discern any plausible basis for application of the rule.

The questions were likewise inadmissible to impeach Warmus on his assertion that he led a law-abiding life. R.C. 2923.16(B) defines the offense of improperly handling firearms in a motor vehicle and states: "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." Warmus testified that he took firearms seriously and that he received training in firearm use and handling, but was unaware that it was illegal to transport a loaded firearm in a vehicle when that firearm was within reach of the driver or passenger. The state now claims that "it did not create the impression that the Appellant illegally transported a firearm in his vehicle," Appellee's Brief at 23, but this claim belies what transpired at trial. The state asked Warmus whether he was "familiar" with R.C. 2923.16(B) and later said, "you had no idea that it was illegal to convey a loaded weapon?" Finally, the state characterized Warmus's act of transporting a loaded gun inside the car as "committing a crime by conveying it[.]" These questions created the impression that Warmus had broken the law, as the phrase "committing a crime" allows for no other reasonable conclusion but that Warmus illegally transported a firearm.

Despite the error in the state's questions, we cannot find them so prejudicial that they deprived Warmus of a fair trial. Warmus conceded that he shot the victim, so questions about whether he illegally transported his firearm paled by comparison. We do not think it is remotely possible that questions about Warmus' illegally transporting the gun somehow swayed the jury into rejecting the self-defense claim. Any misconduct by the state was thus harmless beyond a doubt.

(Doc. 8-1, Ex. 10).

Petitioner argues this error was not harmless; at issue was whether Petitioner shot the victim in self-defense and the implication that he had a gun illegally gave the jury the false impression he did not come to the fray with clean hands. (Doc. 18, at 32). While this may be true, as the state court indicated, the jury would have learned Petitioner was carrying a gun regardless. The prosecutor's remarks were brief, and it is difficult, at best, to say that the knowledge Petitioner carried the firearm illegally would have swayed the jury into rejecting his self-defense claim any more than the knowledge that he had brought a gun at all might sway the jury. Moreover, even if this knowledge had had some impact on the jury, it is difficult to say that

the admission of these remarks was so egregious that it rendered Petitioner's trial fundamentally unfair.

Thus, because the prosecutor's remarks were generally within the bounds of the law and because the few errors made cannot be said to be so egregious as to render Petitioner's trial unfair and violate his due process rights, the undersigned recommends the Court dismiss Ground Three of the Petition on its merits.

**Ground Five**

In his Fifth Ground for relief, Petitioner asserts that Ohio's law placing the burden of self-defense on the criminal defendant is unconstitutional. Petitioner cites *District of Columbia v. Heller*, 554 U.S. 570 (2008) for the premise that the right to self-defense is a fundamental right guaranteed by the Second Amendment and then alleges that Ohio's placement of the burden of proof of self-defense on the criminal defendant fails to provide the heightened protection against governmental interference that is required for fundamental rights. (Doc. 1, at 42-46).

However, the Supreme Court has not found Ohio's duty to retreat requirement or its burden of proof of self-defense to be unconstitutional. As the Eighth District points out, although the duty to retreat has been rejected in many states it is difficult to say it violates the Second Amendment, given that "it undeniably existed when the Second Amendment was adopted." (Doc. 8-1, Ex. 10). Although Petitioner argues that Ohio's duty to retreat is not the same as its burden shifting, the fact remains that no court has found Ohio's self-defense law to be unconstitutional and Petitioner has not provided a clear argument on how this fundamental right is compromised by Ohio's law. Therefore, the Court should dismiss Ground Five on its merits.

**Ground Seven**

Petitioner argues the trial court unduly restricted his ability to confront key prosecution witnesses. (Doc. 1, at 50). Specifically, Petitioner argues he was not permitted to fully cross-examine Eric Livingston and Detective Lem Griffin. (Doc. 1, at 50-51). The Eighth District analyzed this claim as follows:

> The Fifth and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense by compelling the attendance and presenting the testimony of witnesses for the defense. *Washington v. Texas* (1967), 388 U.S. 14, 18-19, 87 S.Ct. 1920, 18 L.Ed.2d 1019. In addition, "[the necessary ingredients of the [Fifth and] Fourteenth Amendment[s'] guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony[.]" *Rock v. Arkansas* (1987), 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37. The right to present a criminal defense, however, is not absolute. *United States v. Valenzuela-Bernal* (1982), 458 U.S. 858, 875, 102 S.Ct. 3440, 73 L.Ed.2d 1193. The defendant is entitled to only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 106 S.Ct. 292, 89 L.Ed.2d 674. Accordingly, the court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674. To establish a Confrontation Clause violation, the defendant must show that he was "prohibited from engaging in otherwise appropriate cross-examination" and "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Id.* at 680.
>
> ***
>
> Livingstone gave his opinion that Warmus was not in any danger at the time he retrieved his gun and shot the victim. On cross-examination, defense counsel asked: "Now, from your vantage point, when you say this all happened and you say that you never saw [the victim] pull or point a gun, you must be surprised ultimately to find out the [the victim] actually had a gun out before he was shot?" The court sustained the state's objection and ordered defense counsel to rephrase the question. Defense counsel then asked, "[w]ere you surprised to find out ultimately that [the victim] in fact had a gun out before he was shot?" The state again objected. At the sidebar, the court told defense counsel that he was mischaracterizing prior testimony by an emergency medical technician. The court

25

told defense counsel: "I'll permit you to ask do you know if a gun was found, do you know when the gun came out, do you know if the gun was out before he was shot, but to say that the EMS guy said the gun was out before he was shot is not technically accurate." Defense counsel told the court that he had the right to ask any question on cross-examination and that he was "not tying it into what the EMS person said." Defense counsel admitted to the court that up to that point in the trial, no person had testified to seeing the victim having "a gun out."

As defense counsel was forced to concede, there had been no testimony prior to that point in trial where any witness claimed to have seen Williams holding a gun. During questioning of the emergency medical technician who treated the victim on the scene, he responded to the question, "[b]ut you definitely recall seeing a gun near [the victim's] head on the pavement," by saying, "I did not see a weapon." So any question posed to Livingstone that presumed that the victim "actually had a gun out before he was shot" had no basis in fact. The court did not abuse its discretion by sustaining the state's objection to it because the question had the potential to confuse the jury by injecting facts not in the record. Moreover, Livingstone's testimony that Warmus could have safely retreated without shooting Williams was premised on his opinion that he did not see Williams holding a gun and that Warmus was in no danger from Williams. Even had Livingstone been aware that the victim possessed (but did not display) a gun, that fact would have been immaterial to his conclusion that Warmus was not in any danger at the time he went to his trunk and retrieved his gun.

\*\*\*

During Detective Lem Griffin's testimony, he gave his understanding of the circumstances under which a police officer would be justified in using deadly force. On cross-examination, Griffin acknowledged that he was not a lawyer and defense counsel asked, "[s]o the legal opinions you just expressed are not the opinions of a lawyer." The court sustained the state's objection.

The court did not abuse its discretion by sustaining the objection. Griffin's opinions were based on questions premised on the idea of how a police officer would have responded in the same situation - a premise first put forth by Warmus in opening statement when he claimed that he responded to the victim's threat in the same way a police officer would have responded. Griffin's opinion was thus grounded on his personal experience as a police officer, not as an attorney, a fact he readily acknowledged in his testimony. Defense counsel's question was thus misleading and arguably intended to confuse the jury on issues that were not relevant. In any event, by conceding that he was not an attorney, Griffin arguably answered the defense's question about whether his opinions were that of a lawyer. Warmus can show no prejudice.

(Doc. 8-1, Ex. 10).

26

With respect to Eric Livingston's testimony, as the state appellate court indicated, Petitioner's questioning was attempting to mislead the jury about what another witness, the EMS Tech, had said. Petitioner argues that this ignores evidence during the suppression hearing that the gun had been found near the victim. (Doc. 18, at 54). However, as the court correctly indicated, no witness had testified that the victim had a gun out, thus there was no basis in fact to assume the victim had had a gun out, only that a gun was later found next to him, a question that the trial court would have permitted. Thus, as the Eighth District indicated, the trial court properly sustained the state's objections to prevent confusion of the issues in this case.

With respect to Detective Griffin's testimony, as discussed in Ground One, the state's questioning as to whether a police officer would be justified in using deadly force was proper as it pertained to his experience as a police officer and was not a legal question. As the Eighth District explained defense counsel likely was trying to confuse the jury about the question. Therefore, the state appellate court properly analyzed the issues and the Court should dismiss Ground Seven on its merits because Petitioner has not shown the trial court deprived him of his right of confrontation.

**<u>Ground Nine</u>**

In the portion of Ground Nine that has not been procedurally defaulted, Petitioner argues he received ineffective assistance of counsel because his trial counsel failed to object to improper evidence and erroneous jury instructions and court rulings, specifically failing to request a *Remmer* hearing after learning the trial judge had provided a ride to a sitting juror, opening the door by comparing Petitioner's actions to a police officer, and failing to object to a confusing jury instruction that switched the burden of proof. (Doc. 1, at 54-58).

Effective assistance of trial counsel is guaranteed by the Sixth Amendment. *Strickland v.*

*Washington*, 466 U.S. 668, 685 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland*: that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Strickland*, 466 U.S. at 698; *See also Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 686–692).

To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

Review of a *Strickland* claim is doubly deferential in a § 2254 proceeding. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[] . . . is . . . highly deferential – and doubly deferential when conducted through the lens of federal habeas."). This double deference arises because the *Strickland* standard is a general standard, giving a state

court even more latitude to reasonably determine that a defendant has not satisfied the standard. *Knowles v. Mirzayance*, 556 U.S. 11, 123 (2009). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 131 S. Ct. 770, 785 (2011). Accordingly, the pivotal question in any § 2254 action that presents an ineffective assistance claim, is "whether the state court's application of the *Strickland* standard was unreasonable." *Id*. at 785.

Here, the Eighth District Court of Appeals rejected Petitioner's ineffective assistance of counsel claim as follows:

> Although counsel did not request a *Remmer* hearing upon learning that the trial judge gave an alternate juror a ride to the courthouse, we stated in our discussion of the fifth assignment of error that a *Remmer* hearing was unnecessary because the judge made it clear that he did not discuss anything about the case with the juror. The judge explained that he studiously avoided any conversation relating to the case. Defense counsel had no reason to doubt the court's recapitulation of the conversation and offered no objection to the way the court handled the matter. Defense counsel thus exercised his judgment that no impropriety occurred. Even were we of a mind to second-guess this decision, nothing on the record suggests to us that the court's explanation was so lacking in veracity that a full *Remmer* hearing was necessary.
>
> ***
>
> Regarding the preliminary jury instruction on self-defense, we agreed that the court erred by transposing the word "state" for "defendant" when assigning the burden of proving self-defense. Counsel had an obligation to object to this instruction under Crim.R. 30 and failed to do so, thus violating an essential duty.
>
> We nonetheless find that even had the court correctly stated the burden of proof in its preliminary instructions to the jury, there is no reasonable probability that the outcome of the trial would have been different. The evidence overwhelmingly showed that Warmus could have safely retreated without resorting to deadly force. Indeed, while the victim did possess a firearm, none of the many eyewitnesses to the shooting saw that weapon. At best, one witness, who worked with the victim, said only that he "tried to reach for his gun" at the time he was shot, but that he did so only because Warmus had first pulled out his own gun. Warmus was the only witness to say that the victim pulled the gun first, a claim that was self-interested and against the great weight of the testimony.
>
> Every other witness agreed that the fight had ended and that the victim had turned away from Warmus and resumed tending to parking lot customers. Warmus could

have easily and safely retreated without resorting to deadly force. And if Williams had pulled a gun first, it is unclear how Warmus thought it believable that he could walk to his car, retrieve his gun, and return to Williams while aiming a gun at him. If Williams had manifested an immediate intention to shoot Warmus, surely Warmus would not have risked walking to the trunk of his car to get a gun, all the while being held at gunpoint himself. The jury obviously found Warmus's version of events unbelievable.

Finally, to the extent the court erred in instructing the jury on the burden of proof, it is difficult to see how that error was prejudicial to Warmus. In his fourth assignment of error he complained that Ohio's statutory requirement that a defendant bear the burden of proof on self-defense was unconstitutional because the burden should rest with the state. Assuming that the jury did put the burden of proving self-defense on the state, it inadvertently gave Warmus what he wished for all along. Even if the instruction did confuse the jury, that confusion would undoubtedly have worked in Warmus's favor as it might have caused the jury to split on whether he or the state proved the elements of self- defense. He cannot now complain that he was prejudiced by the court's error and we find no basis for finding that the outcome of the trial would have been different had the jury been correctly instructed.

(Doc. 8-1, Ex. 10).

Upon review, the state court's analysis that Petitioner's counsel's failure to request a *Remmer* hearing was a proper exercise of discretion is correct. There was no reason for anyone to doubt the veracity of the judge's statements; therefore the failure to conduct a hearing was not deficient performance.  Similarly, it is difficult for this Court to ascertain how the trial court mistakenly stating that the burden of proof for self-defense was on the state could possibly have prejudiced Petitioner. This should have been a benefit to his client. Therefore, Petitioner's counsel was not ineffective under *Strickland* and the Court should dismiss the remainder of Ground Nine on its merits.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Court deny and dismiss the Petition.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).